IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| GARY SCOT MITCHELL and BONNIE L. MITCHELL,<br><br>Plaintiffs,<br><br>vs.<br><br>WHEATLAND MEMORIAL HEALTHCARE,<br><br>Defendant. | CV-11-50-BLG-CSO<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiffs Gary Scot Mitchell and Bonnie L. Mitchell ("Mitchells") claim that Defendant Wheatland Memorial Healthcare ("Wheatland") breached an agreement to sell property to them. The Mitchells claim: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) specific performance. *Third Am. Cmplt. (Court Doc. 29).* The parties consented to this case's assignment to a magistrate judge for all purposes. *Notice of Assignment (Court Doc. 11).*

Now pending are the parties' motions for summary judgment. (*Court Docs. 54, 61*).  Having reviewed the parties' briefs and submissions, the Court rules as set forth below.

I.   **BACKGROUND**

Gary Scot Mitchell was Wheatland's chief executive officer.  *Court Doc. 29 at ¶ 5*.  On June 7, 2005, the Mitchells and Wheatland board of directors chairman Leon Lammers and board treasurer Dean Blomquist signed a Lease Option Agreement ("Agreement").  *Id. at Ex. B* (Lease Option Agreement (*Court Doc. 29-3*)) *at 1-4*.[1]  The Agreement provided the Mitchells with the option to purchase property in Harlowton, Montana, and contained a method for determining the purchase price of the property at the time the Mitchells chose to exercise the option.  *Id*.  On January 27, 2009, two members of Wheatland's board of directors and the Mitchells signed an amendment to the Agreement.  *Id. at Ex. C* (*Court Doc. 29-3*).

The Agreement provided, in part, as follows:

3.   RENT: Tenant/Buyer agrees to pay Landlord/Seller the sum

---

[1]Document and page numbers cited herein refer to the numbers assigned by the Court's electronic filing system.

2

of $750.00 per month, with the first payment beginning July 2005 as rent for the Property, for the term of the Lease/Option, and during any extensions thereof. All rental payments shall be due and payable in advance by the 10th Day of each and every month. An amount equal to the full amount of rent for each and every month in which rent was paid, shall be credited to the Tenant/Buyer and applied to the purchase price of the Property in the event that the Tenant/Buyer exercises its option hereunder.

4. OPTION TO PURCHASE: The Tenant/Buyer, as part of the consideration herein, is hereby granted by the Landlord/Seller the exclusive option, and privilege of purchasing the Property at any time during the term of this Lease/Option or any extensions thereof.

   *   *   *

6. REMEDIES UPON DEFAULT: In the event of any such default by Tenant/Buyer of this Lease Option, Landlord/Seller shall have the option to terminate this Lease/Option by giving written notice of termination at least 60 days in advance. Tenant/Buyer is not entitled to any refund of rent whatsoever should the Lease/Option be terminated in accordance with this section.

   *   *   *

14. PRICE AND TERMS: The Tenant/Buyer agrees to pay for said Property the sum of $155,000.00 less any sums for which the Tenant/Buyer is entitled to claim as reimbursement or offset in accordance with this Lease/Option; the net sum to be paid in cash, certified check or cashiers check at closing.

   *   *   *

16. TITLE: The Landlord/Seller shall convey marketable title to the Property with the above described inclusions, by General Warranty Deed free, clear and unencumbered.

17. CLOSING: The deed shall be delivered and the purchase money shall be paid at a time and place of Tenant/Buyer's choice, no later than 90 days after notification to the Landlord/Seller of the Tenant/Buyer's exercise of the option.

18. COSTS AND PRORATION: The following items shall be prorated to the Landlord/Seller and the Tenant/Buyer as of the closing date: (a) all real estate taxes and assessments.

*Court Doc. 63-4 at 14, 16.*

The Mitchells sent a letter to Wheatland dated December 13, 2010, giving notice that they were exercising the option. *Wheatland's Stmt. of Undisputed Facts (Court Doc. 56) at ¶2; Mitchells' Stmt. of Genuine Issues (Court Doc. 59) at 2.* The letter provided:

> Please consider this letter as notice that we would like to exercise our option to purchase the real property and improvements located at 212 Fifth Street NW in Harlowton, as spelled out in the lease option we executed in 2005. We will be in contact to work out the specifics of the purchase.

*Court Doc. 29-4.*

On January 3, 2011, Mark Taylor ("Taylor"), then chairman of Wheatland's board of directors, sent the Mitchells a letter stating:

> The Board of Trustees for Wheatland Memorial Healthcare

4

> has taken under advisement your request to purchase the real property located at 212 Fifth Street NW in Harlowton. The Board is currently consulting with legal council [sic] regarding the property and will discuss this further at the January Board meeting.

*Court Doc. 59-2 at 24.*

On January 12, 2011, Taylor sent the Mitchells a letter stating:

> It has come to the attention of the Board of Trustees for Wheatland Memorial Healthcare that you have been consulting with a realtor about the property located at 212 Fifth Street NW in Harlowton.  We are asking that you do not list or show the property until after the purchase is complete and the deed has been transferred into your name.

*Court Doc. 59-2 at 25.*

Also on January 12, 2011, Taylor sent a letter to David Miller's attention at Central Montana Real Estate stating:

> It has come to the attention of the Board of Trustees for Wheatland Memorial Healthcare that Scot and Bonnie Mitchell have been in contact with you about the property located at 212 Fifth Street NW in Harlowton.  We are asking that you do not list or show the property until after the purchase is complete.  We are in receipt of the Mitchell's request to purchase the property and are currently in the process of gathering information to be able to make a formal offer on the property.

*Court Doc. 59-2 at 26.*

On February 24, 2011, Taylor sent the Mitchells a letter stating:

5

> In response to your request to exercise your lease option to purchase the property at 212 Fifth Street NW in Harlowton, MT our attorney has prepared the enclosed buy-sell agreement.
>
> If you accept the terms of the agreement, please sign and return to us on or before April 1st.

*Court Doc. 59-2 at 23.* The Buy-Sell Agreement, signed by Taylor and sent with his February 24, 2011 letter, contained a purchase price of $124,878 and other terms. *Court Doc. 29-5 at 1-4.*

On February 27, 2011, Gary Scot Mitchell sent Wheatland's board of trustees a letter stating, in part:

> We are in receipt of the Buy-Sell Agreement executed on February 24, 2011 by Wheatland Memorial Healthcare in response to our decision to exercise the option to purchase the property at 212 Fifth Street NW, Harlowton, Montana. We are generally in agreement with the Buy-Sell Agreement with the exception of Section 2. PURCHASE PRICE.
>
> Section 14. PRICE AND TERMS, in the Lease Option Agreement states that the price of said property will be $155,000 less any sums we are entitled to claim as reimbursement or offset in accordance with the Lease Option Agreement. Section 3. RENT, further stipulates that an amount equal to the full amount of rent for each and every month in which rent was paid shall be credited to us and applied to the purchase price of the Property in the event that we exercise our option hereunder.

6

> Since July 2005 we have paid monthly rent of $750 for 68 months through February 2011. This amounts to a total of $51,000 in rent payments which is to be used to offset the $155,000 purchase price. Our lender states that they will need 4 to 6 weeks after receiving an executed Buy-Sell Agreement in order to have an appraisal and title search completed before closing may take place. With this in mind I would suggest that we target a closing date of May 1, 2011.
>
> \*   \*   \*
>
> If you will correct the purchase price as noted in the Buy-Sell Agreement and return it to us within the next two weeks, we should be able to meet the May 1, 2011 closing date. If the closing date of May 1, 2011 is not possible, we will continue to make $750 monthly rent payments until closing, each of which will further reduce the purchase price by an additional $750.

*Court Doc. 72-4.*

On March 22, 2011, Wheatland board chairman Taylor sent the Mitchells a letter stating:

> Effective immediately, we are withdrawing the Buy-Sell Agreement dated February 24th, 2011 for the real property: Lots 1, 2, 3 and 4 in Block 5 of Park Addition to the City of Harlowton, MT commonly known as 212 Fifth Street NW, Harlowton, MT.

*Court Doc. 29-7.*

The Mitchells filed this action on May 17, 2011. *Cmplt. (Court Doc. 1) at 1, 6.*

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving

8

party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. Again, the

opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the

10

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### III. DISCUSSION

#### A. Wheatland's Summary Judgment Motion

Wheatland seeks summary judgment on the Mitchells' breach of contract claim arguing that the Mitchells failed to notify it of the time and place for closing and did not pay or attempt to pay within 90 days of giving notice that they were exercising the option to purchase. *Deft.'s Mem. in Support of Mtn. (Court Doc. 55) at 5-8.* Thus, Wheatland

11

argues, "the Mitchells materially breached the Lease Option Agreement ...." *Id. at 8*.

The Court concludes that genuine issues of material fact preclude summary judgment for Wheatland on the Mitchells' breach of contract claim. "The construction and interpretation of a contract is a question of law for the Court to decide." *In re Estate of Burrell*, 245 P.3d 1106, ¶ 22 (Mont. 2010) (quoting *Wyant v. Kenda*, 102 P.3d 1260, ¶ 10 (Mont. 2004)). Whether a party materially breached a contract, however, is a fact question. *Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, ¶ 58 (Mont. 2008) (citing *Eschenbacher v. Anderson*, 34 P.3d 87, ¶ 22 (Mont. 2001)).

Here, as noted above, the Agreement allows the Mitchells the option to purchase the leased property. It provides that the purchase price shall be $155,000 minus amounts the Mitchells are entitled to claim as reimbursement or offset. The Agreement further provides that the Mitchells shall be credited from the purchase price all rent that they paid. And, it provides that the deed shall be delivered and the purchase money paid at the time and place of the Mitchells' choosing no

later than 90 days after their notification of exercise of the option to purchase.

As the correspondence between the parties indicates, the Mitchells notified Wheatland by letter dated December 13, 2010, that they were exercising their option to purchase under the Agreement. *Court Doc. 29-4.* The Court concludes that Wheatland's course of conduct following the Mitchells' notification, summarized below, raises fact issues that preclude summary judgment on the Mitchells' breach of contract claim.

About three weeks after the Mitchells' notification, Wheatland responded by stating that it was consulting legal counsel and planning to discuss the purchase at its next board meeting. *Court Doc. 59-2 at 24.* A short time later, Wheatland's board chairman, Taylor, wrote to both the Mitchells and the Mitchells' real estate agency asking them not to list or show the property, acknowledging the Mitchells' notification that they were exercising the option to purchase, and advising that the board was "gathering information to be able to make a formal offer on the property." *Court Doc. 59-2 at 26.*

13

About six weeks later, on February 24, 2011, and more than 70 days after the Mitchells notified Wheatland that they were exercising the option, Taylor sent the Mitchells a letter and a proposed buy-sell agreement. In the letter, he stated that if the Mitchells accept the buy-sell agreement's terms, they were to sign and return the agreement by April 1. This letter and the buy-sell agreement raise fact issues precluding Wheatland's summary judgment motion for at least two reasons.

First, as Wheatland concedes, the buy-sell agreement accompanying Taylor's letter is a counteroffer. It contains a purchase price materially different from that contained in the Agreement. As such, it gives rise to a reasonable inference that Wheatland would not perform unless the Mitchells agreed to pay an amount greater than required by the Agreement. Under Montana law, an unauthorized demand for performance of a term not in the contract, together with the demanding party's unequivocal statement that it will not perform unless the other party meets the additional term, is an anticipatory breach that excuses performance by the other party. *Eschenbacher*, 34

P.3d at ¶ 38 (citing *Chamberlin v. Puckett Construction*, 921 P.2d 1237, 1240-41 (Mont. 1996)). Fact issues surrounding the effect of Wheatland's counteroffer preclude summary judgment in Wheatland's favor on the Mitchells' breach of contract claim.

Second, in Taylor's letter, Wheatland requested that the Mitchells, if they accept the counteroffer's terms, sign and return the document to Wheatland by April 1, 2011. The suggested deadline for the Mitchells to accept Wheatland's counteroffer exceeds the 90-day time period for closing contained in the original Agreement. Fact issues surrounding Wheatland's counteroffer and its suggested timing for the Mitchells' performance also preclude summary judgment in Wheatland's favor on the Mitchells' breach of contract claim.

In light of the foregoing, the Court also concludes that fact issues preclude Wheatland's summary judgment motion to the extent it is directed at the Mitchells' claims for breach of the implied covenant of good faith and fair dealing and for specific performance.

### B. The Mitchells' Summary Judgment Motion

The Mitchells' first argue that Wheatland has breached the

Agreement between the parties. *Pltfs' Mem. in Support of Mtn. For Summary Judgment (Court Doc. 62) at 21-22.* Genuine issues of material fact, discussed above, preclude summary judgment on the Mitchells' claim for breach of contract. Similarly, to the extent the Mitchells' seek summary judgment on their claim that Wheatland breached the implied covenant of good faith and fair dealing and on their claim for specific performance, *id. at 22-27*, the Court will deny the motion because of fact issues.

The Mitchells next argue that Wheatland's affirmative defenses are subject to summary dismissal. *Id. at 27-35.* They argue that Wheatland's: (1) third, sixth, and ninth affirmative defenses are barred by the limitations period applicable to corporate matters, *id. at 27-28*; (2) third and ninth affirmative defenses concerning alleged lack of authority to enter the Agreement lack factual support, *id. at 28-29*; (3) sixth affirmative defense concerning conflict of interest lacks factual and legal support, *id. at 29*; (4) fourth affirmative defense asserting fraud by the Mitchells and fifth affirmative defense asserting mistake are barred by the applicable limitations periods and lack factual support, *id. at 29-32*; (5) seventh affirmative defense asserting that the

Mitchells failed to mitigate damages lacks factual support, *id. at 32-33*; (6) eighth and tenth affirmative defenses, concerning repudiation and specific performance, respectively, lack both factual and legal support, *id. at 33*; and (7) affirmative defenses, collectively, are barred by laches, *id. at 33-35*. For the reasons explained below, the Mitchells' motion will be denied.

First, to the extent the Mitchells argue that applicable limitations periods bar Wheatland's third, fourth, fifth, sixth, and ninth affirmative defenses, the Court is not persuaded. Adhering to the well-known maxim that "a statute of limitations should be used only as a shield, not a sword[,]" courts generally permit defenses that would be barred by applicable statutes of limitations if raised as claims, provided the asserting party is not seeking affirmative relief on an identical claim. *City of St. Paul, Alaska v. Evans*, 344 F.3d 1029, 1035 (9th Cir. 2003). "Thus, whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation posture." *Id*.

Here, Wheatland has asserted its affirmative defenses in response to the Mitchells' claims against it. It has not advanced its own

17

affirmative claims directed at the Mitchells and is not seeking affirmative relief. Wheatland's affirmative defenses are defenses and not claims in disguise, and based on the foregoing authority, the limitations periods do not bar them.

Second, respecting Wheatland's third and ninth affirmative defenses concerning alleged lack of authority to enter the Agreement, the Court concludes that fact issues preclude summary judgment. For example, Wheatland's current CEO, Terri Donovan ("Donovan"), testified in her deposition that Wheatland's "board authorized the entering into the lease option agreement, provided it yielded a positive cash flow [but] [t]he option agreement that was executed by the finance committee did not meet that requirement as mandated by the board." *Depo. of Terri Donovan (Court Doc. 51) at p. 14, ll. 15-19; see also id. at p. 14, ll. 20-25, p. 15, ll. 1-5 and 22-25, p. 16, ll. 1-4.*

Third, respecting Wheatland's sixth affirmative defense concerning conflict of interest, fact issues preclude summary judgment. Again, Donovan testified in her deposition that Gary Scot Mitchell, while Wheatland's CEO, was involved in the decision-making process that would result in a financial gain to him personally and a financial

18

loss to Wheatland as a result of the Agreement. *Id. at p. 58, ll. 16-25, p. 81, ll. 3-25, p. 83, ll. 21-24, and p. 85, ll. 7-22.*

Fourth, respecting Wheatland's fourth and fifth affirmative defenses asserting fraud and mistake, respectively, fact issues preclude summary judgment. Donovan testified as to the factual bases for these affirmative defenses. *Id. at p. 52, ll. 7-22 and p. 53, ll. 11-18* (concerning fraud) *and p. 57, ll. 17-25 and p. 58, ll. 1-13* (concerning mistake).

Fifth, respecting Wheatland's eighth affirmative defense asserting repudiation, fact issues preclude summary judgment. Donovan testified about the factual bases for this affirmative defense. *Id. at p. 60, ll. 2-5.*

Sixth, respecting Wheatland's tenth affirmative defense concerning specific performance, the Court has already determined, as discussed above, that fact issues preclude summary judgment.

Seventh, respecting Wheatland's affirmative defense that the Mitchells failed to mitigate damages, the Court concludes, for the reasons already discussed, that fact issues preclude summary judgment. It would be premature, at this juncture, for the Court to

attempt to assess the proper measure of damages.

Eighth, respecting the Mitchells' argument that laches bar all of Wheatland's affirmative defenses, the Court is not persuaded. The Mitchells have cited no authority that permits the Court to apply the doctrine of laches to bar Wheatland's affirmative defenses. Also, for all of the reasons already discussed, fact issues render summary judgment inappropriate on all claims and affirmative defenses herein.

Because of the foregoing conclusions, it also would be premature for the Court to address the issues of damages or attorney's fees. Thus, to the extent the Mitchells seek summary judgment on their claims for contract damages and attorney's fees, their motion is denied.

For all of the reasons stated above, the Court will deny the Mitchells' summary judgment motion.

## IV. <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that Wheatland's summary judgment motion (*Court Doc. 54*) is DENIED and the Mitchells' summary judgment motion *(Court Doc. 61)* is DENIED.

DATED this 23rd day of May, 2012.

<u>/S/ Carolyn S. Ostby</u>
United States Magistrate Judge
